UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAUREEN TAYLOR,

    Plaintiff,

v.

METROPOLITAN DEVELOPMENT COUNCIL,

    Defendant.

CASE NO. C22-5509-JCC-SKV

REPORT AND RECOMMENDATION

INTRODUCTION

Defendant Metropolitan Development Council (MDC) filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a). Dkt. 9. Plaintiff Maureen Taylor opposes the motion to dismiss. Dkt. 11. The Court, having considered the briefing, recommends MDC's Motion to Dismiss, Dkt. 9, be DENIED.

BACKGROUND

Plaintiff worked as a Chemical Dependency Nurse for MDC from 2017 through February 2020. Dkt. 1-2, ¶¶ 3.2, 3.8. She belonged to a union and her employment was governed by a

signed and valid collective bargaining agreement (CBA) negotiated by OPEIU Union Local 8 AFL-CIO.  *Id*., ¶¶3.3, 4.1 & Ex. A.[1]

Plaintiff alleges she was bullied, harassed, and subjected to false allegations by her colleagues from 2019 through 2020 and that MDC refused to properly investigate, deliberately destroyed relevant video evidence, and refused to turn over relevant records to her union.  *Id*., ¶3.5.  She further alleges that, in mid-December 2019, she reported missing controlled substances and identified over- and under-medicating of patients due to improper transcription of orders.  *Id*., ¶3.6.  MDC subsequently advised Plaintiff of "vague 'staff complaints'" and, without explanation of the reason, placed her on unpaid leave until early January 2020.  *Id*., ¶3.7.  The hostility and bullying continued upon her return to work and her request for hours, back-pay, and benefits due.  *Id*., ¶3.8.  MDC terminated Plaintiff in February 2020, pointing to unprofessional conduct and patient neglect.  *Id*., ¶¶3.8-3.9.

Plaintiff filed a grievance over the termination and eventually reported the missing controlled substances and medication issues to the Washington Department of Health.  *Id*., ¶3.10.  On May 20, 2022, she filed suit in Pierce County Superior Court, alleging breach of her employment agreement/CBA, wrongful termination in violation of public policy, and retaliation.  *Id*., ¶¶4.1-4.9.  MDC thereafter removed the matter to this Court pursuant to § 301 of the LMRA, 28 U.S.C. § 185(a) (establishing federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.")

---

[1] *See supra* at pages 4 and 7-8 for discussion of documents properly considered in addressing the motion to dismiss.

1    MDC now moves to dismiss. MDC argues Plaintiff does not state a viable § 301 claim
2   by failing to allege a breach of her union's duty of fair representation, that the claim is time-
3   barred by the six-month limitations period of § 10(b) of the National Labor Relations Act
4   (NLRA), 29 U.S.C. § 160(b), and that the pendent state law claims are preempted by the LMRA.
5   Plaintiff denies her claims are subject to dismissal, arguing her claims fall outside of the CBA,
6   that the CBA does not mandate arbitration, and that the CBA expired prior to her termination.
7   She also argues that, in Washington, she need not exhaust CBA contractual remedies for public
8   policy violations and retaliation before initiating a cause of action.

9                                         DISCUSSION

10  A.    Standard

11          Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon
12  which relief may be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain
13  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
14  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.
15  544, 570 (2007)). This requirement is met when the plaintiff "pleads factual content that allows
16  the court to draw the reasonable inference that the defendant is liable for the misconduct
17  alleged." *Id*. Although a complaint need not provide detailed factual allegations, it must give
18  rise to something more than mere speculation of a right to relief. *Twombly*, 550 U.S. at 555.
19          In considering a Rule 12(b)(6) motion, the Court accepts all facts alleged in the complaint
20  as true and makes all inferences in the light most favorable to the non-moving party. *Baker v.*
21  *Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The
22  Court is not, however, bound to accept the non-moving party's legal conclusions. *Iqbal*, 556
23  U.S. at 678.

24

The Court may not, as a general matter, consider material beyond the complaint without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Exceptions to this rule include material properly submitted as a part of the complaint and documents not physically attached to the pleading if the contents are alleged in the complaint and no party questions the authenticity. *Id*. *See also United States v. Ritchie*, 342 F.3d 903, 907-09 (9th Cir. 2003) (a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") A court may also take judicial notice of "'matters of public record[,]'" *Lee*, 250 F.3d at 688-89 (quoted source omitted), meaning a fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

B.    <u>Claim Alleging Breach of CBA</u>

Plaintiff alleges MDC breached the CBA by terminating her "without cause and without benefit of progressive discipline and contrary to how similarly situated employees were treated." Dkt. 1-2, ¶4.3. When an employee alleges breach of a collective bargaining agreement, the suit against the employer rests on § 301 of the LMRA. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). In seeking dismissal under Rule 12(b)(6), MDC argues Plaintiff fails to adequately plead a § 301 claim by not alleging the union breached its duty of fair representation and that any such claim is now barred by the six-month statute of limitations in § 10(b) of the NLRA. *See id*. at 163-34, 169-71.

Generally, an employee alleging breach of a collective bargaining agreement may bring one of two types of claims. *Greer v. Pac. Gas & Elec. Co.*, 265 F. Supp. 3d 1053, 1068-69 (E.D. Cal. 2017). A "straightforward" § 301 claim entails an allegation that an employer breached the

REPORT AND RECOMMENDATION - 4

CBA "without accompanying allegations that a union breached its duty of fair representation." *Id.* at 1068 (citations omitted). This type of claim "is brought directly against an employer and involves the employee's uniquely personal rights including wages, hours, overtime pay, and wrongful discharge." *Id.* (cleaned up and citations omitted).

Before bringing such a suit, "an employee seeking to vindicate personal rights under a collective bargaining agreement must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987), and *DelCostello*, 462 U.S. at 163). "Subject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the agreement." *DelCostello*, 462 U.S. at 163-64. As exceptions to these general requirements, an employee can file a straightforward § 301 claim where the CBA does not provide for a binding grievance process or the employer's actions "effectively repudiated the grievance procedures of the CBA." *Greer*, 265 F. Supp. 3d at 1068 (citations omitted).

An exception to the exhaustion requirement also exists where the union representing the employee in the grievance/arbitration procedure acts "'in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation.'" *Soremekun*, 509 F.3d at 986 (quoting *Del Costello*, 462 U.S. at 164). *See also Ly Chhen v. Boeing Co.*, No. C18-779-MJP, 2018 WL 4103665, at *2 (W.D. Wash. Aug. 29, 2018) ("There are three exceptions to the exhaustion requirement: (1) where the employee's use of the procedure would be futile; (2) where the employer has repudiated the CBA; and (3) where the Union has breached its duty of fair representation.") (citing *Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967)). In that instance, the employee may bring a "hybrid" claim under § 301, challenging the employer for breach of the

agreement and the union for breach of the duty of fair representation, "notwithstanding the outcome or finality of the grievance or arbitration proceeding." *DelCostello*, 462 U.S. at 164-65. A lawsuit raising a hybrid claim need not name both the employer and union as defendants. *Id.* at 165. However, the two components of a hybrid claim are "'inextricably interdependent.'" *Id.* at 164-65 (quoted sources omitted). That is, the employee must plead and prove two claims: "first, that the employer breached the collective bargaining agreement, and second, that the labor union breached its duty of fair representation." *Soremekun*, 509 F.3d at 987-89 (dismissing on summary judgment where the record clearly established a failure to exhaust contractual remedies and no breach of the duty of fair representation was alleged in the complaint).

Hybrid claims are subject to the six-month statute of limitations set forth in § 10(b) of the NLRA, 29 U.S.C. § 160(b). *DelCostello*, 462 U.S. at 169-71. *See also Soremekun*, 509 F.3d at 989 n. 39 ("Even if Soremekun had alleged the Union's breach of the duty of fair representation in his complaint, and had succeeded in raising a triable issue of fact regarding that claim, his § 301 claim would be barred by the statute of limitations. This is because hybrid § 301/fair representation claims are subject to the six-month statute of limitations set forth in section 10(b) of the [NLRA.]") (citations omitted). A straightforward § 301 claim alleging breach of contract is, on the other hand, governed by the most closely analogous state law statute of limitations. *O'Sullivan v. Longview Fibre Co.*, 993 F. Supp. 743, 748 (E.D. Cal. 1997) (citing *DelCostello*, 462 U.S. at 162-65); *accord Gen. Teamsters Union Loc. No. 174 v. Trick & Murray, Inc.*, 828 F.2d 1418, 1423 (9th Cir. 1987) (citing *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701-07 (1966)). In Washington, for example, a six-year statute of limitations applies to actions alleging breach of a written contract. RCW § 4.16.040(1).

In this case, MDC asserts that the CBA establishes a mandatory grievance procedure and that Plaintiff is bound by the results of that procedure. MDC contends Plaintiff's § 301 claim should be dismissed because she does not adequately plead such a claim by failing to allege the union breached its duty of fair representation during the mandatory grievance procedure.

Plaintiff did not, in opposing the motion to dismiss, directly respond to MDC's assertion of a pleading defect. She contends the "CBA Defendant relies upon for dismissal and that is presently before the Court **expired** on July 31, 2019" and is therefore not applicable to her February 2020 dismissal. Dkt. 11 at 2, 7 (emphasis in original). This argument is not well taken. Plaintiff attached the CBA with the July 2019 expiration date to her Complaint and in support of her claim MDC "breached the contract CBA" by terminating her without cause and without support of progressive discipline. Dkt. 1-2 at ¶¶4.1-4.4 & Ex. A. The Court may, moreover, consider the "Extension Agreement" provided by MDC and unambiguously showing extension of the CBA through January 31, 2021. Dkt. 13, Ex A. That is, while not attached to the Complaint, the Extension Agreement is properly incorporated by reference because its authenticity is not in question and it is necessarily relied upon by the breach of contract claim raised in the Complaint. *Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 907-09. Indeed, the Extension Agreement is not properly excluded from consideration where Plaintiff's claim that her termination violated the CBA rests on its very existence. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44, 48 (2d Cir. 1991) ("Plaintiffs' failure to

include matters of which as pleaders they had notice and which were integral to their claim . . . may not serve as a means of forestalling the district court's decision on the motion.")

Plaintiff also points to the content of the CBA in opposing the motion to dismiss. She contends the CBA allows for the filing of a lawsuit as an option to a grievance procedure. Dkt. 11 at 10 (citing Ex. A at § 30.07). She also contends that, because the fourth step of the CBA grievance procedure indicates a grievance "may" be submitted to mediation or arbitration, arbitration is not mandatory. *Id*. at 10-11 (citing Ex. A at § 30.03). She states she "participated in the grievance process[,]" but "did not engage in arbitration." Dkt. 11 at 4. Plaintiff further observes that MDC did not move to compel arbitration prior to removing this action from state court and that her breach of contract claim is predicated not only on the terms of the CBA and is also based on a breach of MDC's employee handbook.

MDC does not, in its reply, address Plaintiff's arguments as to the content of the CBA. MDC instead reiterates that Plaintiff's § 301 claim is subject to dismissal based on a pleading defect and a six-month statute of limitations, stating: "Here, plaintiff cannot state a claim against her union because the union *did* pursue her grievance through several steps. And, after they completed their handling of the grievance, she failed to timely bring an action against the union." Dkt. 13 at 2.

MDC's arguments for dismissal, as related to both the sufficiency of the pleading and the statute of limitations, hinge on its depiction of Plaintiff's § 301 claim as hybrid. However, at this juncture, questions of exhaustion and the type of claim before the Court remain unclear or at least insufficiently addressed by the parties. Plaintiff alleges in her Complaint that she "filed a grievance over the termination[,]" Dkt. 1-2 at ¶3.10, and, in response to MDC's motion, states she "participated in the grievance process", but did not engage in what she deems non-mandatory

arbitration, Dkt. 11 at 4.  MDC, without reference to the Complaint or any other materials properly considered in relation to a Rule 12(b)(6) motion, asserts Plaintiff pursued "several" steps of the grievance procedure.  Dkt. 13 at 2.  *Cf. Ly Chhen*, 2018 WL 4103665, at *1-2 (arguing the plaintiff's failure to exhaust in support of a motion to dismiss).  MDC also, while asserting that the CBA contains a mandatory grievance procedure and that Plaintiff is bound to finality provisions in that agreement, neither discusses relevant provisions of the CBA, nor responds to Plaintiff's arguments as to its content.[2]

Nor is this a case in which the issue of exhaustion and the type of § 301 claim pled is readily apparent.  *Cf. Flury v. Marriott Int'l Inc.*, No. C21-1068, 2022 WL 137577, at *2-4 (D. Ariz. Jan. 14, 2022) (finding § 301 claim properly characterized as hybrid where the CBA required compliance with relevant grievance procedures and plaintiff acknowledged she did not fully exhaust those procedures, and plaintiff sued both her employer and union, accused the union of violating its duty of fair representation, and, after being informed the claim would be time-barred, belatedly attempted to recharacterize the claim by dropping the union as a defendant and asserting her claim had nothing to do with the union's representation).  Instead, Plaintiff filed suit directly against her employer, some two years and three months after her termination, raises claims exclusive to her personal rights, and did not name the union as a defendant or challenge any union action or inaction.

---

[2] Section 30.03 of the CBA provides that, in the event of an employee grievance involving termination, three steps "shall be followed", including a final step providing that "the grievance (i) may by mutual agreement be submitted to mediation . . . or (ii) may at the election of either party be taken to arbitration." Dkt. 1-2, Ex. A at § 30.03.  Section 30.07 states: "A grievance shall not be processed under this Agreement on behalf of any employee, who files or prosecutes or permits to be filed or prosecuted on his/her behalf, in any court or government agency, a claim, complaint, or suit, complaining of the action grieved under Federal, State or Municipal law or regulation.  Other remedies may be pursued upon exhausting the grievance procedure." *Id*. at § 30.07.  The Court declines to address Plaintiff's arguments in relation to these provisions without further information on exhaustion or other responsive arguments from MDC.

1    It is true that the pleading does not provide detail on the issue of exhaustion or other
2 relevant aspects of the CBA.  However, MDC similarly fails to set forth such detail in its motion
3 to dismiss and, in considering that motion, the Court must accept the allegations in the
4 Complaint as true and draw all inferences in the light most favorable to the non-moving party.
5 Here, finding MDC's showing as to exhaustion and the nature of the § 301 claim deficient, and
6 drawing all inferences in Plaintiff's favor, the Court concludes MDC's motion to dismiss the §
7 301 breach of contract claim should be denied.

8    C.   State Law Claims

9    Plaintiff also raises state law claims for wrongful termination in violation of public policy
10 and retaliation.  She alleges MDC terminated her in contravention of public policies that protect
11 employees who report illegal acts, misconduct, or unsafe conditions, and in contravention of a
12 clear mandate of public policies to protect healthcare workers who report missing controlled
13 substances and/or unsafe practices in a chemical dependency unit.  Dkt. 1-2 at ¶¶4.5-4.6.  She
14 alleges MDC retaliated against her for her reporting and follow up regarding controlled
15 substances and over/under medication of patients by placing her on unpaid leave, failing to
16 provide job counseling on her return, and terminating her employment.  *Id*. at ¶¶4.8-4.9.  MDC
17 argues these pendent state law claims are preempted and should be dismissed.

18    Cases interpreting the LMRA emphasize the need for uniformity in federal labor laws.
19 That is, § 301 "should be 'understood . . . as a congressional mandate to the federal courts to
20 fashion a body of federal common law to be used to address disputes arising out of labor
21 contracts.'"  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)
22 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)).  This federal common law
23 preempts the use of state law in the interpretation and enforcement of a collective bargaining
24

agreement. *Id*. (citing *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc)). "Once preempted, 'any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Section 301 preempts a state law claim if resolution of that claim "'depends upon the meaning of a collective-bargaining agreement.'" *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 750 (9th Cir. 1993) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)). Courts employ a two-step test to determine whether a claim is preempted. *Burnside*, 491 F.3d at 1059-60. First, "[i]f the right exists solely as a result of the CBA, then the claim is preempted, and [the court's] analysis ends there." *Id*. at 1059. Under this inquiry, only a claim "'founded directly on rights created by [a] collective-bargaining agreement'" is preempted by § 301. *Kobold*, 832 F.3d at 1033 (quoting *Caterpillar, Inc.*, 482 U.S. at 394). Second, if "the right exists independently of the CBA, [the court] must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement. If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Burnside*, 491 F.3d at 1059-60 (cleaned up and quoted sources omitted).

Under the second part of the test, claims are not preempted if they involve merely "looking to versus interpreting the CBA." *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132 (9th Cir. 2016) (cleaned up and quoted sources omitted). "Interpretation is construed narrowly; it means something more than consider, refer to, or apply." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (cleaned up and quoted source omitted). There must be more than a "hypothetical connection between the claim and the terms of the CBA. . . ;

adjudication of the claim must *require* interpretation of a provision of the CBA." *Cramer*, 255 F.3d at 691-92 (emphasis added).

MDC here points to CBA Articles 18, 26, and 29 as providing for its right to put Plaintiff on leave pending an investigation and to terminate her employment. Article 18 provides for MDC's right to terminate and administer discipline in a manner not inconsistent with the CBA. Dkt. 1-2, Ex. A at § 18.01. Article 26 reflects MDC's agreement to promote "high standards of safety" and encourages employees to "report any unsafe conditions to their supervisor, who has the authority to deal with the matter in accordance with the established procedures." *Id*. at §§ 26.01-.02. Pursuant to Article 29, "[n]o employee will be disciplined or discharged without just cause[,]" which may include, *inter alia*, suspension without pay. *Id*. at § 29.01. Article 29 also provides that employees agree to comply with MDC's work rules and code of conduct, and explains the process for dealing with an alleged violation of a work rule or regulation or a finding of deficient work performance. *Id*. at § 29.02.

MDC argues Plaintiff's state law claims are preempted because the above-described provisions would necessarily have to be interpreted and analyzed to determine whether Plaintiff was disciplined for just cause and without retaliation. It further asserts that, because the scope and meaning of the CBA "is not limited to the text of the agreement" and also involves "'the industrial common law – the practices of the industry and the shop'", *Kobald*, 832 F.3d at 1046 (quoted source omitted), the wrongful termination and retaliation claims could not be resolved without such interpretation. MDC observes that Plaintiff does not allege she sought to grieve the decision to put her on leave or that the union refused to assist or failed to fairly and adequately represent her in relation to that discipline. It identifies the six-month limitations period for § 301

claims, rather than a three-year limitations period under Washington law, *see, e.g.*, RCW 4.16.080(2), as applicable to these claims.

MDC does not, however, demonstrate Plaintiff's state law claims are properly dismissed under Rule 12(b)(6). Plaintiff's claims do not allege termination or other disciplinary action in violation of the CBA's disciplinary or discharge terms. The claims allege wrongful termination in violation of public policy protecting employees who report unsafe conditions and retaliation as a result of Plaintiff's engagement in that protected activity. The mere fact these claims "involve topics – such as termination, employee discipline, and reporting misconduct – that the CBA happens to cover does not compel the conclusion [the] claims 'substantially rely' on interpreting it." *Green v. Swedish Health Servs.*, No. C21-1286-JCC, 2021 WL 5937169, at *2 (W.D. Wash. Dec. 16, 2021). *See also Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002) ("[A] CBA provision does not trigger preemption when it is only *potentially* relevant to the state-law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur.") Nor does MDC explain how consideration of Plaintiff's claims would require interpretation of a provision stating MDC will promote high standards of safety, encouraging employees to report unsafe conditions, and allowing supervisors to deal with those reports. The mere fact this and other provisions could be "looked at" or considered does not support preemption. *See Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) (finding that although the legitimacy of plaintiff's termination depended on an understanding of the CBA, it did not require an interpretation of the agreement and was therefore not preempted).

MDC does not, in sum, show interpretation of the CBA would be required for consideration of Plaintiff's state law claims. *See, e.g., Green*, 2021 WL 5937169, at *2 (employer failed to show race discrimination and retaliation claims required interpretation of

CBA provisions on termination, discipline, and reporting misconduct or provisions requiring compliance with antidiscrimination laws and prohibiting discrimination or termination without just cause:  the "main thrust" of the claims was not that the employer "acted inconsistently with the CBA but rather that [it] singled out [the plaintiff] for harsh treatment compared to his coworkers."); *Pierson v. Nw. Steel & Pipe, Inc.*, No. C18-0432-JCC, 2018 WL 2731930, at *2 (W.D. Wash. June 7, 2018) (claim alleging violation of public policy through termination for insubordination and stemming from opposition to unsafe work practice not preempted by § 301 where the decision did not relate to the terms of the CBA and instead turned on the employer's motive for termination; also finding discrimination claim not preempted where plaintiff did not allege termination in violation of CBA's disciplinary terms, he alleged "'race was a motivating factor in his termination' – an issue not addressed in the CBA."); *McNeill v. Unified Grocers*, No. C09-0527-JLR, 2009 WL 10676379, at *3 (W.D. Wash. June 29, 2009) (finding determination of an employee's claim of termination in violation of public policy based on her belief she had been retaliated against for filing a grievance did not require interpretation of the CBA; claim depended on a finding employee engaged in protected activity (filing a grievance), but resolution of the claim did not require an understanding of the meaning of a term in the CBA) (citation omitted).  MDC is therefore not entitled to a finding of preemption or to dismissal of Plaintiff's state law claims.

## CONCLUSION

For the reasons discussed above, MDC's Motion to Dismiss, Dkt. 9, should be DENIED. A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and

served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 14, 2022**.

Dated this 26th day of September, 2022.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge