UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAUREEN TAYLOR,

    Plaintiff,

v.

METROPOLITAN DEVELOPMENT COUNCIL,

    Defendant.

Case No. C22-5509-JCC-SKV

ORDER RE: DEFENDANT'S MOTION TO AMEND ANSWER

INTRODUCTION

Defendant Metropolitan Development Council (MDC) filed a Motion for Leave to Amend Answer to Complaint. Dkt. 47. Plaintiff Maureen Taylor opposes the motion. Dkt. 53. The Court, having considered the motion, all papers filed in support and opposition, and the remainder of the record, herein DENIES the motion to amend upon finding an absence of good cause under Federal Rule of Civil Procedure 16(b).

BACKGROUND

Plaintiff initiated this lawsuit on May 20, 2022 with the filing of her Complaint in Pierce County Superior Court. Dkt. 1-2. Plaintiff previously worked as a chemical dependency nurse for MDC, and alleges she was placed on unpaid leave and ultimately terminated after she made internal reports of missing controlled substances and over- and under-medicating of patients due

ORDER RE: DEFENDANT'S MOTION TO
AMEND ANSWER - 1

to improper transcription of orders.  *Id*.  She brings claims for breach of the Collective Bargaining Agreement (CBA) between MDC and Plaintiff's union, wrongful termination in violation of public policy, and retaliation.  *Id*.

MDC removed the matter to this Court on July 14, 2022 and, shortly thereafter, filed a motion to dismiss.  Dkts. 1 & 9.  The Court denied the motion to dismiss by Order dated November 1, 2022, and proceeded to enter a scheduling order, a stipulated amended scheduling order, and a stipulated extension of the discovery deadline.  Dkts. 18, 22, 34 & 45.  Ultimately, the Court set deadlines of August 11, 2023 for the filing of amended pleadings, November 10, 2023 for the completion of discovery, and November 13, 2023 for the filing of dispositive motions.  Dkts. 34 & 45.  Trial is scheduled to commence on March 11, 2024.

Plaintiff filed a motion for leave to amend her Complaint on August 11, 2023, Dkt. 37, and the Court denied that motion by Order dated October 16, 2023, Dkt. 46.  On November 3, 2023, MDC filed the motion currently under consideration, seeking leave to amend its Answer.  Dkt. 47.  MDC also, on November 9, 2023, filed a Motion for Summary Judgment.  Dkt. 50.

## DISCUSSION

MDC seeks leave to amend its Answer with an affirmative defense of failure to mitigate.  *See* Dkt. 47 & Dkt. 47-1.  MDC seeks to pursue this defense based on two theories: (1) that Plaintiff rejected an offer of reinstatement that was conveyed as a part of a "make whole" remedy during her union grievance proceeding; and (2) that she elected to stay home and care for her sick spouse rather than seek paid employment in the workforce.  MDC argues that it should be allowed to pursue both of these theories, which have now been developed and confirmed through discovery.

ORDER RE:  DEFENDANT'S MOTION TO
AMEND ANSWER - 2

While the failure to mitigate damages is not among the affirmative defenses enumerated in Federal Rule of Civil Procedure 8(c), it is a Rule 8 affirmative defense as a matter of federal procedural law. *999 v. C.I.T. Corp.*, 776 F.2d 866, 870 n. 2 (9th Cir. 1985). As such, failure to plead lack of mitigation of damages as an affirmative defense ordinarily constitutes a waiver of that defense. *Id*. (citations omitted).[1]

MDC moves for leave to amend pursuant to Federal Rules of Civil Procedure 15 and 16. Dkt. 47. Under Rule 15, the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a). Granting leave to amend serves the purpose of Rule 15 to "'facilitate decision on the merits, rather than on the pleadings or technicalities[,]'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoted source omitted), and the Rule's policy of favoring amendments "should be applied with extreme liberality[,]" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (cleaned up and citations omitted). The decision to grant or deny a motion for leave to amend rests in the sound discretion of the Court, *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985), and leave to amend may be denied where there is undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile, *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, once a court has entered a pretrial scheduling order establishing a deadline for the amendment of pleadings, Rule 16(b) governs a request to amend. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 16(b), the Court first

---

[1] A court need not find a failure to mitigate defense waived if "the issue of mitigation was included in the pretrial order, which has the effect of amending the pleadings." *999*, 776 F.2d at 870 n. 2 (citing *Federal Deposit Ins. Corp. v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971)). However, in the current matter, MDC proceeds on a motion to amend and seeks to argue the defense in a pending motion for summary judgment. *See also* Dkt. 34 (setting February 26, 2024 deadline for pretrial order).

ORDER RE: DEFENDANT'S MOTION TO
AMEND ANSWER - 3

determines whether there is "good cause" to amend the scheduling order. *Id*. at 608; Fed. R. Civ. P. 16(b)(4). Unlike Rule 15(a)'s more lenient standard that primarily considers the bad faith of the moving party and any prejudice to the opposing party, Rule 16(b)'s good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. In other words, "[t]he district court may modify the scheduling order 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id*. (quoting Fed. R. Civ. P. 16 Advisory Comm. Notes (1983 amendment)). If the party seeking the extension "was not diligent," then good cause does not exist and the inquiry should end. *Id*. But if the Court determines that good cause exists, it must next assess whether the proposed amendment is proper under Rule 15(a). *Id*. at 608.

In this case, MDC filed its motion to amend on November 3, 2023, almost three months after the August 11, 2023 deadline for filing amended pleadings. The Court must therefore first determine whether there is good cause to amend the scheduling order under Rule 16(b).

A.  Rule 16

In asserting good cause to amend the scheduling order and allow for a defense of failure to mitigate, MDC argues four pieces of evidence were necessary for it to confirm the offer to reinstate Plaintiff's employment was made, conveyed accurately, and clearly rejected, and that these four pieces of evidence would have allowed it to satisfy Rule 11 and assert the defense in good faith. MDC describes the "piecemeal" discovery of the first three pieces of evidence. Dkt. 55 at 6. First, on March 15, 2023, Plaintiff produced a text exchange between herself and her union.[2] Second, in her May 17, 2023 deposition, Plaintiff testified she had not sought reemployment following her termination and testified about the offer of reinstatement, but

---

[2] MDC states that Plaintiff produced such evidence in March 2023, but provides no further detail.

1  denied that she got an offer from MDC.  Third, the union's production of records, provided to

2  MDC on June 21, 2023, appeared to show the union had communicated to Plaintiff MDC's offer

3  to reinstate her employment.  *See* Dkt. 47 at 8-9 (citing Dkt. 48, Ex. C).

4  MDC asserts that it anticipated discovering the fourth piece of evidence in a deposition of

5  Leslie Liddle, Plaintiff's union representative, set to occur on October 10, 2023.  That is, through

6  this deposition, MDC would discover "what, if anything, happened behind-the-scenes to cause

7  [the reinstatement offer] not to be accepted."  Dkt. 55 at 5.  However, the deposition was

8  canceled because Plaintiff did not arrange for valid service of a subpoena and it has yet to be

9  rescheduled.  MDC asserts that it ultimately determined it had factual support for a persuasive

10  argument while preparing its motion for summary judgment.  It was, at the same time, awaiting

11  the Court's decision on its motion to dismiss "before it began to address what issues it could

12  argue in a summary judgment motion."  Dkt. 47 at 9.

13  Plaintiff argues that MDC fails to establish its diligence in relation to the failure to

14  mitigate defense and therefore fails to show good cause for an extension of the deadline to file

15  amended pleadings.  The Court, for the reasons discussed below, agrees with Plaintiff.

16  MDC's suggestion that the timing of the Court's ruling on the motion to dismiss played a

17  role in the timing of MDC's motion to amend is not well taken.  The Court ruled on the motion

18  to dismiss on November 1, 2022, two months prior to the initial, January 4, 2023 scheduling

19  order, more than nine months prior to the August 11, 2023 deadline for amended pleadings, and

20  a full year before MDC filed its summary judgment motion.  Dkts. 18, 22 & 50.  It cannot, in

21  other words, be reasonably said that MDC was awaiting the Court's ruling on the motion to

22  dismiss while attempting to formulate its arguments on summary judgment.

23

ORDER RE:  DEFENDANT'S MOTION TO
AMEND ANSWER - 5

MDC also fails to show diligence in relation to the discovery of evidence relevant to the mitigation defense. MDC, in fact, fails to clearly or accurately depict the extent of the evidence in its possession prior to the August 2023 deadline.

In its motion, MDC asserted that the first piece of failure to mitigate evidence came to light in Plaintiff's May 2023 deposition testimony that she had not sought any reemployment,[3] and that the second piece "came partially to light" with its receipt of union records in June 2023 showing the apparent communication of the reinstatement offer. Dkt. 47 at 8-9. In its reply, MDC acknowledged that, in March 2023, Plaintiff produced a text exchange with her union. *See* Dkt. 55 at 6. MDC does not, however, acknowledge Plaintiff's March 2023 interrogatory answer explaining that she had twice discussed an offer of reinstatement with Liddle. Dkt. 56, Ex. 2, Answer to Interrogatory No. 4 ("At one point [Liddle] said MDC wanted me to work [in] the Mental Health Inpatient Unit if I were to return, which I strongly disagreed with. [Liddle] proposed to me, again, while waiting for Arbitration to take place, that "they", MDC, again offered me a position on the Inpatient Mental Health unit. Why, if they had an employee who was allegedly Disciplined for Workplace Misconduct and Terminated for Unprofessional Conduct and Patient Neglect, would you offer them a position to work with yet a different group of vulnerably ill patients."). Plaintiff also, at that same time, stated that she had stayed home to care for her sick spouse since March 2021. *See id.*, Answer to Interrogatory No. 5 (" . . . Since March 2021, my husband has been acutely and chronically ill. I have to be at home with him 24/7 to take care of his health. I have had no pay, insurance, social security, benefits, or

---

[3] Plaintiff testified that her only employment since leaving MDC was a seasonal position working for the post office, and that she was not employed and was at home caring for her spouse. Dkt. 56, Ex. 3 at 38:18-39:12. She also testified that she had recently applied for a job that would allow her to work at home, was not going to work outside of the home because of her husband's health, and that she had not previously attempted to obtain remote work because her husband had only in the month prior become able to "actually do things on his own[.]" *Id.* at 39:13-23, 40:2-5.

ORDER RE: DEFENDANT'S MOTION TO
AMEND ANSWER - 6

retirement funds for support.  I cannot take Family Leave, Vacation, or Sick time to take care of him, because I lost my job in February 2020.  I have had to constantly be on the computer, phone, or texting to receive the attention and follow-up my case was allowed by MDC and the Union.  It has been three years since my termination, and my situation is only worsening.")

Nor does MDC fully account for Plaintiff's May 2023 deposition testimony regarding her communications with Liddle.  *See* Dkt. 56, Ex. 3 at 195-96.  A review of that testimony shows that MDC asked about and Plaintiff testified at length in regard to two text exchanges with Liddle concerning a reinstatement offer. Dkt. 56, Ex. 3 at 195:13-25, 196:1-20 (when shown the first text exchange, wherein Liddle wrote, ". . . I agree, but they're offering your return to employment at the same classification, same wage, just in a different location.  This is the hurdle[,]" Plaintiff testified she understood the offer conveyed by Liddle was to "put [her] over on the mental health unit[,]" and that she responded:  "They wrongfully terminated me and neglected to provide any supporting documentation. [] I want full restoration of the position they had no right to yank me from to begin with.  Tell me why I can't have my job back."), and 196:21-197:24 (testimony regarding the second text exchange: "Q.  . . . You ask, What did they offer before?  She responds, Return to work, but at E&T.  You say, No.  She asks, This is what they offered before.  Do you recall a different offer?  No, I'm just not changing jobs when I did not do what they accused me of.  What caused a second interaction with Leslie about this same offer to return to E&T?  A.  The first offer . . . was before I came back from unpaid administrative leave.  She says, They may want you to go work on the mental health unit.  . . . And I said I'm not -- no, what did I do?  . . .  I'm not going to mental health without an explanation or any information.  . . .  And so I was wondering what offer did they make, because they hadn't made no offer at all.  What are you talking about, for after I was terminated.  Q.  So

ORDER RE:  DEFENDANT'S MOTION TO
AMEND ANSWER - 7

your testimony is that, while you were out on leave in December and January, you had been offered a chance to return to work, but at the E&T?  A.  She says they wanted to put me on the mental health unit.")

In its reply, MDC asserts only that Plaintiff "testified about the offer, but <u>*denied receiving it from MDC*</u>", and that Plaintiff contemplated a legal action against the union because "they were supposed to write up a settlement document and present it to me."  Dkt. 55 at 6 (emphasis in original; quoting Dkt. 56, Ex. 3 at 196:1-4, 197:17-18 ("Q.  . . . What was the offer from MDC, as you understood it.  A.  I didn't get an offer from MDC.  This is what Leslie told me. . . .  So I was wondering what offer did they make, because they hadn't made no offer at all.")  MDC, in so doing, omits Plaintiff's description of her communications with Liddle about the reinstatement offer and any context for her statement that she had not received an offer from MDC.[4]

MDC similarly fails to provide a complete picture of the evidence associated with Plaintiff's post-termination activity.  For example, while asserting that Plaintiff's responses to discovery requests "did not contain a clear response regarding her post-termination employment, [or] efforts to obtain such employment," Dkt. 47 at 2 (citing Dkt. 48, Ex. A, Answers to Interrogatory Nos. 10-19), MDC does not identify interrogatories seeking that information.  One interrogatory asks whether Plaintiff had sought or applied for any other employment *during the time she was employed by or on leave from MDC*, Dkt. 48, Ex. A, Answer to Interrogatory No. 10 (Q: "Did you seek and/or apply for any other employment, during the time you were

---

[4] MDC also fails to provide context for Plaintiff's testimony about legal action against her union.  *See* Dkt. 56, Ex. 3 at 197:25-198:2-9 ("Q.  Did you try to pursue legal action of any sort against your union?  A.  Would you like to go back to the text notes where it says [the union was] supposed to write up a settlement document and present it to me?  Q.  Did you try to pursue any type of legal action against your union?  A.  Did I try?  I hired an attorney.  Q.  Okay.  Anything else?  A.  Nope.")

ORDER RE:  DEFENDANT'S MOTION TO
AMEND ANSWER - 8

employed at MDC, or were on leave? . . . "; A: "No."), while another asks only whether Plaintiff had *obtained* replacement employment since her termination, *id*., Answer to Interrogatory No. 16 (Q: "Have you obtained replacement employment since the adverse employment action? . . ."; A: "No."). None of the interrogatories ask Plaintiff to describe any efforts made to obtain employment after her termination.[5] MDC also suggests that it first learned that Plaintiff had remained home with her ailing husband rather than seeking comparable employment during her deposition, while Plaintiff had, two months earlier, conveyed that information in responding to an interrogatory. *See* Dkt. 47 at 5 & 8; Dkt. 56, Ex. 2.

      MDC further fails to demonstrate diligence in relation to the deposition of Liddle, which MDC depicts as "one half of the puzzle" as to whether Plaintiff was extended an offer of reinstatement. Dkt. 47 at 3. For example, MDC points to Plaintiff's failed attempt to depose Liddle, but does not explain why it did not or could not itself obtain Liddle's testimony. MDC also fails to specify when it became clear Liddle's deposition would not take place. MDC, moreover, argues both that it required Liddle's testimony in order to plead a defense of failure to mitigate, and that it nonetheless became able to plead and argue the defense despite the fact that Liddle's deposition did not occur. *See* Dkt. 55 at 6 ("All four pieces of evidence were necessary, to confirm that the offer was made, conveyed accurately, and clearly rejected. Once the Liddle deposition was canceled, this motion followed shortly. This is an affirmative defense on which MDC bears the burden of proof. Counsel was simply not willing to plead it without factual clarification.") and 9 ("After the completion of all other discovery on October 11, 2023, MDC

---

[5] In its reply, MDC asserts that documents submitted by Plaintiff in opposition to the motion to amend and relating to Plaintiff's efforts to obtain employment should have been produced in discovery. *See* Dkt. 55 at 7. The Court nonetheless finds an absence of diligence on the part of MDC for the reasons discussed herein. However, Plaintiff is advised that she must ensure she has produced all documents responsive to MDC's discovery requests.

ORDER RE: DEFENDANT'S MOTION TO
AMEND ANSWER - 9

began preparing its arguments for the filing of a summary judgment motion and determined it had the factual support for a persuasive argument that [Plaintiff] failed to mitigate her damages.") MDC was therefore able to plead the affirmative defense without Liddle's testimony and with the evidence obtained between March and June 2023, prior to the August 2023 deadline to amend pleadings. *See* Dkt. 50 at 12, 23-25; Dkt. 51, Ex. A; Dkt. 52, ¶10, Ex. 46 (summary judgment motion arguing failure to mitigate and citing to Plaintiff's deposition testimony and text exchanges with Liddle). MDC also waited until November 3, 2023 to file its motion to amend, *see* Dkt. 47, more than three weeks after the anticipated deposition date.

MDC, in sum, does not show that it diligently sought to amend its answer with a failure to mitigate defense. The Court thus concludes that MDC fails to satisfy Rule 16(b)'s good cause standard and that leave to amend is not warranted. *See, e.g., Gilbert MH, LLC v. Gilbert Fam. Hosp., LLC*, No. C18-4046, 2020 WL 2559802, at *3 (D. Ariz. May 19, 2020) (finding defendants failed to show good cause under Rule 16(b) to amend with a failure to mitigate defense where they failed to explain why a deposition relied upon to support the defense did not occur until some eight months after the deadline to amend pleadings: "If the Defendants had been diligent, the Court does not see how they would have waited to depose Adams for eight or more months knowing he had personally guaranteed the Coldwater Loan and this could have revealed a failure to mitigate damages.")

B.   Rule 15

As stated above, a party seeking to amend after the deadline set forth in the scheduling order must first satisfy the Rule 16(b) good cause standard before the Court considers the standard under Rule 15. *Johnson*, 975 F.2d at 608-09. Because MDC fails to show good cause,

the Court need not and does not consider the arguments raised in relation to Rule 15. *See, e.g., Gilbert MH, LLC*, 2020 WL 2559802, at *3.

CONCLUSION

For the reasons set forth above, MDC's Motion for Leave to Amend Answer to Complaint, Dkt. 47, is DENIED. The Clerk is directed to send copies of this Order to the parties and to the Honorable John C. Coughenour.

Dated this 5th day of December, 2023.

S. KATE VAUGHAN
United States Magistrate Judge